UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIG L. LINDEN,<br><br>                          Plaintiff,<br><br>v.<br><br>RESMED INC.; RESMED CORP.; and RESMED HOLDINGS PTY LIMITED,<br><br>                         Defendants. | Case No.: 3:24-cv-1291-JES-DEB<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>**[ECF No. 9]** |

Pending before the Court is the Defendants' Motion to Dismiss. ECF No. 9. Plaintiff filed an opposition, and Defendants filed a reply. ECF Nos. 15, 17. On March 12, 2025, the Court held a hearing on the motion and took the matter under submission. ECF No. 19. After due consideration and for the reasons discussed below, the Court **GRANTS** Defendants' motion.

## I.     BACKGROUND

On July 24, 2024, Plaintiff filed a complaint alleging that Defendants infringed his patent, U.S. Patent No. 9,639,150 ("the '150 Patent"). ECF No. 1. The '150 Patent is titled "Powered Physical Displays on Mobile Devices" and was issued on May 2, 2017. *Id.* ¶ 11. Plaintiff alleges that the patent discloses "various forms and applications of interactive powered display apparatuses and methods, for example, physically and/or electronically

interactive communication enabled end user devices adaptable for use with various other distinct devices and may be remotely controlled to deliver in real-time one or more stimuli, such as air pressure." *Id.* ¶ 13.

While the disclosures in the '150 Patent specifications are fairly broad and purported to cover various interactive powered display apparatuses and methods geared towards different purposes, the claims of the '150 Patent are directed at methods for treating patients. *See* '150 Patent at 16:47-48. The patent includes one embodiment as an exemplar:



The patent further describes this embodiment as follows:

> FIG. 12 generally represents remotely located doctors, therapists, nurses, eldercare professionals, and others using remotely controlled physical and/or electronically interactive devices to help or interact with people or animals with or without locally available human assistants. For example only, a doctor may test the vital signs, strength and/or muscle/nerve reactions of a remote patient while preferably video conferencing with a helper or the patient. Nurses may videoconference and physically and/or electronically interact, treat or help patients perform various tasks.
>
> Home based patients may be provided with remotely released medicine vaults under the control and supervision of a qualified remotely located person, whom may also verify pill and/or liquid ingestion, etc. One remote therapist

> may work with several patients at the same time allowing the patients to remain in their respective dwellings. Various forms of physically and/or electronically interactive devices may be designed and manufactured as required for various recovery, therapeutic, or many other remote interactive situations (hands on customer service, etc.).

'150 Patent at 12:56-13:8.

Plaintiff alleges that Defendants manufacture and sell medical devices, for example, sleep devices and ventilation devices. *Id.* ¶ 7. The accused devices in this case include diagnostic and pulmonary treatment devices, including Defendants' Airsense 10 series, Airsense 11 series, AirCurve 10 ASV, AirCurve 10 ST-A, AirCurve 10 VAuto, S, ST, AirCurve 11, AirView software, and myAir software. *Id.* ¶ 1. Plaintiff asserts one cause of action for patent infringement. *Id.* ¶¶ 15-26.

## II.   LEGAL STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim tests the legal sufficiency of a plaintiff's claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When considering the motion, the court must accept as true all well-pleaded factual allegations in the complaint. *Bell Atlantic Corp. v. Twombly*, 556 U.S. 544, 555 (2007). The court need not accept as true legal conclusions cast as factual allegations. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient). Patent eligibility under 35 U.S.C. § 101 may be raised on a 12(b)(6) motion. *Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369, 1373 (Fed. Cir. 2016). However, this is limited to the circumstance where "there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

Section 101 defines the subject matter eligible for patent protection as "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. Our courts have

recognized that laws of nature, natural phenomena, and abstract ideas are exceptions to patentability. *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 70 (2012). The Supreme Court has enunciated a two-step test for courts to apply when determining whether a patented invention targets an abstract idea. The first part of this framework is to determine "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014). If the answer is yes, then the second part of this framework asks whether that patent contains an "inventive concept sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Id.* at 221 (citation omitted).

## III.   DISCUSSION

As a threshold matter, the parties both focus on Claim 1 of the '150 Patent as a representative claim. Claim 1 is the only independent claim of that patent and Plaintiff himself alleges that the claim is "exemplary" of the patent. ECF No. 1 ¶ 16. Thus, the Court finds it appropriate to consider the § 101 patentability issue with this claim in mind. *See, e.g.*, *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290 (Fed. Cir. 2024) ("Limiting the analysis of a § 101 challenge to representative claims is proper when the claims at issue are 'substantially similar and linked to the same' ineligible concept.").

Claim 1 of the '150 Patent claims the following:

1. A method for treating a patient comprising steps of:

   providing a first device at a patient location, the first device being an internet and networking capable multi-media mobile electronic device comprising at least one each of a physical output display and an input transducer,

   providing a second device at a remote location, wherein the second device is distinct and separate from the first device;

   establishing an audio-video and data communication connection between the patient location and the remote location;

   conducting an audio-video conference between the patient at the patient location and a treatment provider at the remote location, wherein the audio-video conference comprises the treatment provider eliciting patient information by verbally interacting with the patient;

        transmitting the patient information from the first device to the second device by way of the audio-video conference;

        using the input transducer to measure a patient parameter at the patient location and produce a first signal indicative of the patient parameter, wherein the patient parameter includes at least one vital sign;

        transmitting the first signal to the second device;

        forming a diagnosis at least partially based on the patient parameter;

        using the first signal at the remote location, the diagnosis and the patient information transmitted before, during or after the audio-video conference to determine a treatment and generating a second signal associated with said treatment;

        sending said second signal from said second device to said first device to administer a treatment; and

        using said second signal to cause a physical interaction between the physical output display and the patient.

### A. Alice Step 1

In assessing patentability under Section 101, the Court first must determine "whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 573 U.S. at 217. In this step, the Court considers the claims "character as a whole" is directed to ineligible subject matter. *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257-58 (Fed. Cir. 2016). But the Court must also balance this "basic character" of the claimed subject matter without "describing the claims at 'such a high level of abstraction and untethered from the language of the claims' that the claims would be virtually guaranteed to be abstract." *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1361 (Fed. Cir. 2023). The Court asks "what the patent asserts to be the focus of the claimed advance over the prior art." *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1359 (Fed. Cir. 2020). Courts often make this decision by "compar[ing] the claims at issue to those claims already found to be directed at an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).

The parties characterize the claim at issue here very differently. Defendants argue that Claim 1 is essentially a remote diagnosis and treatment claim that can be broken down into three steps: (1) establishing a remote connection; (2) diagnosing the patient remotely; and (3) treating the patient remotely. ECF No. 9 at 14-15. They argue that this targets an abstract idea because it is a well-known concept that has been historically performed by humans and all that is added by the claim is to perform it remotely using generic computer components, which is insufficient to transform it to being non-abstract. *Id.* at 15-17. Defendants cite to three main cases that they argue are analogous, where courts found the claims to fail Section 101 patentability. The first case, *SmileDirectClub, LLC v. Candid Care Co.*, 505 F. Supp. 3d 340 (D. Del. 2022), involved technology for direct-to-consumer orthodontists, where the patent claims a method for a workflow where a patient schedules an appointment to have an intraoral scan, such scan is performed at the site, a treatment plan is developed based on the scan, a set of aligners are produced at a fabrication site, and the aligners are sent to the patient. *Id.* at 343-44. The court found that the claims were abstract under *Alice* Step 1 because the patent did nothing more than take an established workflow and place it on top of existing technology; the claims did not include details on any technological advancements. *Id.* at 350-51. The second case, *Becton, Dickinson & Co. v. Baxter Int'l, Inc.*, 127 F. Supp. 3d 687 (W.D. Tex. 2015), involved technology related to remote pharmacy services where a live pharmacist was not available. The claims targeted a method to connecting a non-pharmacist with a remote pharmacist, said pharmacist supervising the non-pharmacist to prepare a medication via a sterile compounding process, capabilities to take images so that the pharmacist can verify the work, transmitting the images to the pharmacist, and having him or her verify the process. *Id.* at 690. The court again found at *Alice* Step 1 that the patent targeted an abstract idea because the supervision and verification by a pharmacist amounted to a "fundamental concept and longstanding practice or organizing human behavior." *Id.* at 693. The court further emphasized that the claims again used generic, off-the-shelf technology in conventional ways. *Id.* The third case, *Audio Evolution Diagnostics, Inc. v. United States*, 160 Fed. Cl. 513 (2022), involved

telehealth technology relating to collecting, processing, and recording sounds associated with physiologic activities of human organs. Transducers are placed on the body to detect sounds, which are then converted to digital signals and transmitted via an electronic apparatus that processes, views, and analyzes the data, which is finally displayed to medical professionals to help them with diagnosis. *Id.* at 517. After reviewing other cases holding similar remote telehealth technology as abstract ideas, the court found the same in that case. *Id.* at 526-27.

Conversely, Plaintiff argues that Defendants' characterization is too broad. Plaintiff argues that Claim 1 requires specific technology, namely a "physical display output." ECF No. 15 at 10. Plaintiff also argues that Claim 1 requires a specific ordered combination of claimed elements, specifically calling out the step requiring "generating a unique 'second signal' to cause a physical interaction between the 'physical display output' and a patient." *Id.* As to Defendants' argument that the claim targets a commonly known human activity, Plaintiff argues that there is no factual record to support this proposition. *Id.* at 12. In addition, Plaintiff argues that the three cases cited by Defendant are distinguishable and relies on two of his own cases. The first case, *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016), involved technology related to automation of facial expressions made during speech and lip synchronization. Defendants in that case argued that the algorithms used were ones that could be done by pen and paper but were just made faster by automating on a computer. *Id.* at 1310. The court disagreed, finding that the claims required application of a combine order of specific rules. *Id.* at 1315. The second case, *Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373, 1375 (Fed. Cir. 2024), involved point-of-view ("POV") video camera technology. Because these cameras are often located where the user cannot see the screen to review what is being recorded, the patent discusses a remote connection to a mobile device that would allow the user to see what is being recorded and to manipulate settings. *Id.* at 1375-76. To achieve this, the patent discloses generating the video in both low and high quality formats, with the low-quality format being used for real-time streaming to the user device and the high-quality format being

saved for future viewing. *Id.* In *Alice* Step 1, the court found that the patent disclosed a specific means to improve existing technology, naming by the two parallel streams that achieved two different purposes for the user. *Id.* at 1379.

Applying the *Alice* framework at Step 1, and after consideration of the parties' arguments, the Court finds that Claim 1 is directed at an abstract concept. The claim can be distilled down to a remote telehealth methodology where the patient is in one location with an electronic device and connected to a doctor at another location with a second electronic device. A video/audio connection is established between the two devices, permitting the doctor and patient to communicate, and at least one vital sign of the patient to be measured at his location and transmitted as a first signal to the second device. A diagnosis is formed using the patient information, and a second signal is sent to the first device to cause a physical interaction between the physical output display and the patient. These steps describe a remote version of what would happen if the doctor and patient were at the same location, with an additional requirement that an electronic device measure a patient parameter and the device administer a treatment to the patient.

The Court disagrees with Plaintiff that more of a factual record needs to be developed to conclude that the claim is directed at an abstract idea. The claimed methodology is similar to those cited in Defendants' cases described above—namely *SmileDirectClub*, *Becton*, and *Audio Evolution*—that those courts all found to be routine human activities. As the *SmileDirectClub* court recognized, "[t]elehealth business methods have in particular been deemed ineligible for patent protection under § 101." 505 F. Supp. 3d at 350; *CardioNet, LLC v. InfoBionic, Inc.*, No. 2020-2123, 2021 WL 5024388 (Fed. Cir. Oct. 29, 2021) (claim that collecting, analyzed, and displayed data using a known mathematical function regarding T waves for cardiac monitoring was abstract)*; Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1368 (Fed. Cir. 2019) (method claim that receives data from bedside machines, converts the data to a format for a remote computing device, performs an action on the data, and then displays it on a bedside graphical user interface was abstract).

In addition, neither of the technological components that Plaintiff points out—namely the physical display output and ordered specific combination of the step requiring a generation of a second signal and physical interaction between the physical display output and patient—are sufficient to make the claim non-abstract. These requirements, like all the other technology recited in the claims, recite generic components and the patent does not disclose any innovation on the technology itself. *Am. Well Corp. v. Teladoc, Inc.*, 191 F. Supp. 3d 135, 145 (D. Mass. 2016) (claims that "only implement a novel idea using admittedly known computer technology . . . cannot save the claims from being abstract").

### B. Alice Step 2

Having found the claim abstract at *Alice* Step 1, the Court will next consider Step 2 of the framework, which asks whether that patent contains an "inventive concept sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 221. A patent cannot "simply state a law of nature while adding the words 'apply it.'" *Mayo*, 566 U.S. at 72. Nor can a claim's only inventive concept be "the application of an abstract idea using conventional and well-understood techniques." *Cellspin Soft Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1316 (Fed. Cir. 2019) (citation and quotation marks omitted). Rather, a claim directed at an abstract idea must include "'additional features' to ensure 'that the claim is more than a drafting effort designed to monopolize the abstract idea.'" *Alice*, 573 U.S. at 221 (cleaned up).

Plaintiff argues that the "inventive concept" in the claim is a "unique powered interactive display that enables real-time, remote physical interaction in the context of medical treatment." ECF No. 15 at 17. He argues that the claim requires non-generic devices and in an ordered combination of steps. Plaintiff specifically emphasizes the step in the patent that requires the transmission of information from the first device to the second device that enables real-time patient treatment via a human-machine interaction. *Id.* at 18. Plaintiff argues that this is what "offers an improvement over the prior art." *Id.* Moreover, Plaintiff argues that the inclusion of this step prevents Claim 1 from preempting all methods of remote diagnosis and treatment because it includes this step for human-machine

interaction. *Id.* Finally, Plaintiff argues that the claim does not depend on generic computer components because it includes claims for a "distinct 'physical output display'" and includes the "ordered capture and transmission of signals to create a unique second signal to enable the real-time physical interaction between the output display and the patient." *Id.* at 20.

Defendants argue that neither of the inventive concepts that Plaintiff identified suffices. First, as to the physical output display, Defendants argue that it is just a generic component, citing to cases where courts have found claims requiring a "display device" to be employing generic computer technology. ECF No. 17 at 12. Second, as to generation of the second signal that cases the interaction between the output display and patient, Defendants argue that this cannot provide the inventive concept either because Plaintiff fails to identify what about the ordered combination makes it novel. *Id.* at 13. Particularly, Defendants argue, where the ordered combination is one that is "traditionally practice" by people manually—here, Defendants argue that the generation of the second signal causing the interaction with the patient is essentially equivalent to the traditional method of a doctor diagnosing the patient and then physically interacting with the patient to administer a treatment. *Id.* at 14.

The Court agrees with Defendants. Utilization of generic components cannot by itself transform claims with an inventive concept. This is not only limited to situations where the claims recite to take an abstract idea and "apply it on a computer or network" as Plaintiff claims. *See* ECF No. 15 at 20. It applies to situations as here where the claim recites a physical component that is well-known in the industry and the patent does not provide any technical details to implement that step in the claim. *See, e.g.*, *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1382 (Fed. Cir. 2022) (no inventive concept where the claims mention a function, such as displaying, "without describing how any of those functions are performed"). Indeed, as Defendants cite, many cases found claims reciting "displays" to be insufficient to supply the inventive concept. *See* ECF No. 17 at 12-13 (citing cases). Plaintiff fails to point to anywhere in the '150 Patent that

describes how the "physical display device" is to be implemented with any technical specificity. Failure to do so reinforces that this limitation is nothing more than a generic component where the patent owner has supplied no technological advancement over what is already known in the art.

Similarly, for the ordered combination, Plaintiff again fails to identify what makes this required step in the claim novel and inventive. This failure distinguishes this case from the *Bascom* case that Plaintiff relies on. In *Bascom*, the court found the ordered combination important because the claim's recited the use of filtering took at a specific location. ECF No. 15 at 18 (citing *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016)). The *Bascom* court specifically pointed out that filtering itself was not inventive, but prior art filters were known to have limitations. The technology dealt with web browsers and their use in the corporate environment where corporations wanted to be able to filter out certain types of website from access for their employees. *Id.* at 1343. Filtering could be done at the individual computer, but this was time consuming to do for each employee, was subject to individual computer specifications, and susceptible to being disabled by a computer savvy employee. *Id.* Alternatively, filtering could be done at a server that connected employee computers with the internet, but then this filter had to be a one-size-fits-all-filter and customization was not possible. *Id.* Against this background, the filtering at the specific location recited in the patent overcame these prior art limitations by providing the filtering "in a manner that can be customized for the person attempting to access such content while avoiding the need for (potentially millions of) local servers or computers to perform such filtering and while being less susceptible to circumvention by the user." *Id.* at 1348-49. Plaintiff patently fails to identify any such improvement or "inventive concept" by the ordered combination required in its claim.

Plaintiff also appears to argue that this ordered combination– step is sufficient as an "inventive concept" because it is not "'necessary' to all 'remote diagnosis and treatment.'" ECF No. 15 at 19. This is a pre-emption argument—Plaintiff argues that because the claim

does not preempt all forms of remote diagnosis and treatment, it meets Step 2 of *Alice*. While courts do recognize preemption as a policy consideration, it is not considered a "stand-alone test for eligibility and the absence of complete preemption does not guarantee that a claim is eligible." *Broadband iTV, Inc. v. Hawaiian Telcom, Inc.*, 136 F. Supp. 3d 1228, 1233 (D. Haw. 2015), *aff'd,* 669 F. App'x 555 (Fed. Cir. 2016) (concluding that lack of total preemption does not make the patent eligible); *see Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015) ("While preemption may signal patent ineligible subject matter, the absence of complete preemption does not demonstrate patent eligibility."); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1098 (Fed. Cir. 2016) (holding same); *Skillz Platform Inc. v. Aviagames Inc.*, No. 21-CV-02436-BLF, 2022 WL 783338, at *16 (N.D. Cal. Mar. 14, 2022) ("And the Federal Circuit has held that a lack of preemption is not sufficient to show that claims are directed to patent-eligible subject matter."). Rather, the question of eligibility is only properly addressed through the *Alice* framework analysis, as the Court does above. *Nat. Alternatives Int'l, Inc. v. Allmax Nutrition, Inc.*, 258 F. Supp. 3d 1170, 1183-84 (S.D. Cal. 2017).

Accordingly, the Court concludes that the claim at issue here is directed at an abstract idea and that it contains no inventive concept sufficient to transform it into patent-eligible application. The motion to dismiss for patent ineligibility is **GRANTED**.

### IV.   LEAVE TO AMEND

The remaining issue for the Court to determine is whether leave to amend the complaint should be granted. Defendants argue that § 101 motions can be decided on a motion to dismiss, and can be granted without leave to amend where a plaintiff cannot identify what additional factual allegations could be added to render amendment not futile. ECF No. 31-32. Plaintiff disagrees, citing to the general liberality regarding permitting amendments to the complaint. ECF No. 15 at 21. Specifically, Plaintiff requests leave to amend "to add allegations regarding the non-conventional aspects of the '150 Patent, including but not limited to, the novel aspects of the disclosed interactive powered display apparatuses and the construction of the term 'physical output display.'" *Id.*

"While the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination." *Aatrix*, 882 F.3d at 1128. Specifically, in the second step of the *Alice* framework, "[w]hether the claim elements or the claimed combination are well-understood, routine, conventional is a question of fact." *Id.* In *Aatrix*, the Federal Circuit reversed a district court for denying a motion for leave to amend a complaint when there were "concrete allegations" in the complaint that the claims included elements and combinations that were not conventional. *Id.* at 1128-30. However, at the 12(b)(6) stage even, "a court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit, such as the claims and the patent specification." *Yu v. Apple Inc.*, 1 F.4th 1040, 1046 (Fed. Cir. 2021) (citation omitted); see also *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (holding same); *Cellspin*, 927 F.3d at 1317-18 ("While we do not read *Aatrix* to say that any allegation about inventiveness, wholly divorced from the claims or the specification, defeats a motion to dismiss, plausible and specifical factual allegations that aspects of the claims are inventive are sufficient.").

Given the liberality of permitting amendments, particularly when Plaintiff has not yet had an opportunity to amend his complaint and is requesting the opportunity to do so, the Court will grant leave to amend the complaint at this time.

//
//
//
//
//
//
//
//
//

## V. CONCLUSION

After due consideration and for the reasons discussed above, the Court **GRANTS** Defendants' motion to dismiss the complaint with leave to amend. If Plaintiff chooses, he may filed an amended complaint **within 21 days of this order**.

**IT IS SO ORDERED.**

Dated: June 30, 2025

*[signature]*

Honorable James E. Simmons Jr.
United States District Judge